United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 03-12154-NMG |
| v. | ) ) | |
| MARTIN J. DRUFFNER and SKIFTER AJRO, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

The Securities and Exchange Commission ("the SEC") brought a civil enforcement action against six individuals who violated securities laws by engaging in market timing activities through false statements and intentional misrepresentations. Pending before the Court is the SEC's motion for disgorgement, prejudgment interest and civil penalties as to defendants Martin J. Druffner ("Druffner") and Skifter Ajro ("Ajro").

I. <u>Background</u>

A. Factual Background

For the purposes of the pending motion, the allegations in the Amended Complaint are taken as true:

At the Boston branch of Prudential Securities, Inc. ("PSI"), Druffner led a brokerage team ("the Druffner Group") which

included brokers (and co-defendants) Ajro and Justin F. Ficken ("Ficken"). From January, 2001, to September, 2003, the Druffner Group violated securities laws by engaging in market timing activities through false statements and intentional misrepresentations. In particular, the defendants used multiple broker identification numbers (financial advisor numbers, hereinafter "FA numbers") and opened numerous customer accounts to evade restrictions on market timing.

The Druffner Group used 13 different FA numbers, despite the fact that it only had five customers. Regardless of the FA number used for a particular transaction, the Druffner Group split the commission in a constant ratio, i.e. 70% for Druffner, 20% for Ficken and 10% for Ajro. The Druffner Group also opened over 170 customer accounts under fictitious names.

Such practices concealed the identities of the brokers and their clients, thereby making it difficult for the funds to detect the market timing activities. As a result, the mutual funds processed transactions that would otherwise have been rejected. When mutual fund companies detected defendant brokers' market timing activities and imposed blocks on such market timing, the defendant brokers switched to using unblocked FA numbers and customer accounts to evade the restrictions.

The defendants continued the offending activities even after PSI announced a policy prohibiting the use of manipulative

techniques designed to avoid detection of certain trading activities, such as executing transactions through alternate FA numbers. In total, the Druffner Group engaged in market timing trades from 25 fund companies that exceeded $900 million.[1] The purchases generated net commissions in the amount of $2,114,802 for Druffner and $231,846 for Ajro.

### B. Procedural History

In November, 2003, the SEC filed a complaint against six defendants, including Druffner and Ajro. In June, 2004, the Complaint was dismissed for failure to comply with the requirements of Fed. R. Civ. P. 9(b). In July, 2004, the SEC filed an amended complaint and the Court denied defendants' renewed motions to dismiss the Amended Complaint.

On October 17, 2006, the Court entered final judgments by consent against Druffner and Ajro which, inter alia, permitted the SEC to move for an order to pay disgorgement and civil penalties, taking as true the allegations of the Amended Complaint. Currently before the Court is the SEC's motion for an order to pay disgorgement, prejudgment interest and civil penalties as to defendants Druffner and Ajro. The motion was filed more than four years after it was authorized.

---

[1] Although the Amended Complaint alleged that five defendants defrauded 52 mutual fund companies in an amount that exceeded $1 billion, the SEC subsequently narrowed that allegation to contend that defendants Druffner, Ficken and Ajro defrauded 25 companies of an amount that exceeded $911 million.

**II. Analysis**

   **A.  Disgorgement**

The SEC seeks the disgorgement of defendants' net commissions from market timing activities in the amount of $2,114,802 with respect to Druffner and $231,846 with respect to Ajro.  The defendants contend that 1) they "have already paid a heavy price for their conduct" and thus disgorgement is unnecessary to deter future violations and 2) the SEC has failed to establish that the amount sought is causally connected to the underlying violations.

Disgorgement orders are necessary to deprive the wrongdoers of their ill-gotten gains:

> The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable.  The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits.

SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972).  Disgorgement is an equitable remedy that "does not serve to punish or fine the wrongdoer, but simply serves to prevent the unjust enrichment."  SEC v. Happ, 295 F. Supp. 2d 189, 198 (D. Mass. 2003).  What the defendant does with the illegally obtained profits is irrelevant for the purposes of disgorgement.  SEC v. Druffner, 517 F. Supp. 2d 502, 511 (D. Mass. 2007).  Moreover, financial hardship is not a ground for denying disgorgement. See, e.g., id., SEC v. McCaskey, 2002 WL 850001, at *5 (S.D.N.Y.

Mar. 26, 2002).

The Court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996). The disgorged amount "need only be a reasonable approximation of profits causally connected to the violation." SEC v. Happ, 392 F.3d 12, 31 (1st Cir. 2004). Any risk of uncertainty falls "on the wrongdoer whose illegal conduct created that uncertainty." Id. Once the SEC shows that the disgorgement is a reasonable approximation, the burden shifts to the defendant to demonstrate that the amount sought is not a reasonable approximation. Id.

The Court finds disgorgement warranted in light of the volume of market timing in which the Druffner Group, including Druffner and Ajro, engaged. Defendants' argument that they "have already paid a heavy price" is unpersuasive. The Court thus turns to the determination of the amount of disgorgement.

This Court ordered disgorgement in the amount of $732,281 against defendant Ficken, finding the amount of his net commissions to be a reasonable approximation of the amount of unjust enrichment. Druffner, 517 F. Supp. 2d at 512. The SEC now seeks a similar disgorgement order against Druffner in the amount of $2,114,802 and Ajro in the amount of $231,846, i.e. an amount equal to each defendant's net commissions from his market

timing activities.  The Court agrees that the net commissions earned by each defendant related to his market timing activities are a reasonable approximation of the amount to be disgorged.

Unlike Ficken, however, Druffner and Ajro dispute the amounts sought and contend that not all commissions were causally connected to transactions that constituted securities violations. Indeed, the materials submitted by defendants raise the possibility that some of the commissions are not causally related to the underlying securities violations.  Defendants fail, however, to identify the extent to which the amount of net commissions should be discounted and any risk of uncertainty must fall on them.  See Happ, 392 F.3d at 31.  Moreover, Druffner admitted in his plea agreement that his gain was at least $1 million before taxes.  Ajro also pled guilty but apparently without a similar admission.

Having considered the arguments of all parties and the admissions of the defendants, the Court finds appropriate disgorgement in the amount of $1 million for Druffner and $110,000 for Ajro.

### B. Prejudgment Interest

The SEC also urges the Court to award prejudgment interest in the amount of $948,235 with respect to Druffner and $103,955 with respect to Ajro.

Although disgorgement and prejudgment interest are both intended to deprive a defendant of ill-gotten gains, they are distinct remedies. SEC v. Sargent, 329 F.3d 34, 41 n.1 (1st Cir. 2003). The Court has broad discretion to determine whether to award prejudgment interest. Id. at 40 & 41 n.1. It is to consider a variety of factors, including the remedial purpose of the statute involved, the goal of depriving culpable defendants of their unlawful gains and unfairness to defendants. Id.

The defendants derived direct monetary benefit from their misrepresentations and retained those profits unjustly. The Court concludes, therefore, that some amount of prejudgment interest is necessary to prevent defendants from receiving the benefit of what would otherwise be an interest-free loan.

There is, however, an unexplained delay of more than four years between the entry of final judgment against Druffner and Ajro in October, 2006, and the SEC's motion for disgorgement and prejudgment interest filed in December, 2010. The Court will, therefore, order prejudgment interest to be awarded <u>only</u> from the time the Amended Complaint was filed to entry of final judgment, i.e. each quarter from August 1, 2004, to September 30, 2006.

The SEC submits that the appropriate rate of prejudgment interest is the rate used by the Internal Revenue Service to calculate underpayment penalties. See 26 U.S.C. § 6621(a)(2) (defining the IRS underpayment rate as the Federal Reserve short

term interest rate plus three percentage points).  The Court agrees that this rate is appropriate under the circumstances.  See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996) ("[C]ourts have approved the use of the IRS underpayment rate in connection with disgorgement").

The Court will, therefore, direct the SEC to submit, with respect to each defendant, a revised Prejudgment Interest Report for the time period from August 1, 2004, through September 30, 2006, using as principal the amount of disgorgement determined by the Court and as interest the rate used by the IRS to calculate underpayment penalties.

**C.  Civil Penalties**

The SEC also moves for the Court to award civil penalties.  Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to impose a civil penalty for certain violations of the federal securities laws.  15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3).

The Court may consider a defendant's ability to pay when determining the amount of civil penalties to impose or whether to waive civil penalties.  See, e.g., SEC v. Soroosh, 1998 WL 904696, at *2 (9th Cir. Dec. 24, 1998) (imposing reduced fine because of defendant's lack of resources); SEC v. Rubin, 1993 WL 405428, at *6-7 (S.D.N.Y. Oct. 8, 1993) (ordering disgorgement of profits and commissions earned on improper trades but taking into

account defendants' financial situations when calculating civil penalties). Indeed, in an earlier stage of the instant case, this Court considered defendant Ficken's inability to pay when it concluded that civil penalties were unwarranted. Druffner, 517 F. Supp. 2d at 513.

Likewise, the Court concludes that the imposition of civil penalties against defendants Druffner and Ajro is unwarranted. According to the materials submitted by Druffner, he is unemployed, although his 2009 joint tax return indicates an annual salary of approximately $30,000. Druffner's net worth is approximately $750,000 but in light of the substantial disgorgement that will be ordered, the Court does not find a civil penalty appropriate. According to the materials submitted by Ajro, he receives an annual salary of approximately $76,000 and his net worth is approximately $27,000. He does not have the means to pay any civil penalties in addition to the disgorgement that will be ordered.

Moreover, both defendants cooperated with law enforcement authorities and have apparently paid other criminal and civil fines. See SEC v. AmeriFirst Funding, Inc., 2008 WL 1959843, *7 (N.D. Tex. May 5, 2008) (noting courts may consider cooperation of defendant with law enforcement and adequacy of other criminal or civil sanctions in determining whether to impose civil penalties). As such, the other remedies ordered will suffice.

**ORDER**

In accordance with the foregoing, plaintiff's motion for disgorgement and civil penalties as to defendants Druffner and Ajro (Docket No. 178) is, with respect to disgorgement and prejudgment interest, **ALLOWED**, but, with respect to civil penalties, **DENIED**. Druffner shall disgorge One Million Dollars ($1,000,000) plus prejudgment interest in an amount to be determined and Ajro shall disgorge One Hundred and Ten Thousand Dollars ($110,000) plus prejudgment interest in an amount to be determined.

On or before July 21, 2011, the SEC shall submit a revised Prejudgment Interest Report for each defendant for the time period of August 1, 2004, to September 30, 2006, using as principal the amount of disgorgement determined by the Court and as interest the rate used by the IRS to calculate underpayment penalties.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated July 7, 2011